IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT AND SUSAN BROCKBANK,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A.;<br>CHASE HOME FINANCE, LLC,<br><br>　　　　　　Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  2:11CV671DAK<br><br>Judge Dale A. Kimball |

　　　　　This matter is before the court on Defendants JPMorgan Chase Bank, N.A., and Chase Home Finance, LLC's (collectively "Chase") Motion to Dismiss Plaintiffs' Amended Complaint. On March 28, 2012, the court held a hearing on the motion.  At the hearing, Plaintiffs were represented by Clayne I. Corey, and Defendants were represented by James D. Gilson, and J. Taylor Fox. After hearing oral argument, the court took the matter under advisement.  The court has considered the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

　　　　　On December 9, 2006, Plaintiff Susan Brockbank executed an Adjustable Rate Note (the "Note") in favor of Washington Mutual Bank, F.A. ("WaMu") in the principal amount of $333,000.  The Note is secured by real property located at 3095 Mojave Lane, Provo,

Utah 84604 (the "Property"), as evidenced by a Deed of Trust (the "Trust Deed") recorded in Utah County, State of Utah, on December 13, 2006.  Chase acquired WaMu's assets in September 2008.  Plaintiffs acknowledge that Chase is the servicer of the loan.

In 2009, Plaintiff Susan Brockbank defaulted under the Note and Trust Deed by failing to make two monthly payments.  She then sought to obtain a modification of the loan from Chase under the federal Home Affordable Modification Program ("HAMP").  On November 19, 2009, Susan Brockbank entered into a Home Affordable Modification Trial Period Plan (the "Trial Plan"), which allowed Brockbank to make a temporarily modified monthly payment while the loan was being evaluated for a possible permanent modification.

The Trial Plan provided that Plaintiff Susan Brockbank understood and agreed to the following:

a.  "I understand that after I sign and return one copy of this Plan to the Lender, the Lender will review my modification package and send me written notice if I do not qualify for the Offer."

b.  "[T]he Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates."

c.  "When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents."

d. "If…I do not provide all information and documentation required by Lender, the Loan Documents will not be modified and this Plan will terminate."

e. "I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this Plan."

f. "I agree…[t]hat all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents."

On October 20, 2010, Chase informed Susan Brockbank that it had not received all of the necessary documents required under the Trial Plan and HAMP.  On November 2, 2010, Chase sent a letter to Susan Brockbank stating that she did not qualify and had been denied a permanent loan modification because Chase was "unable to create an affordable payment equal to 31% of [her] reported monthly gross income without changing the terms of [the] Loan beyond the requirements of the program."  The letter explained that "[t]he Home Affordable Modification Program requires calculation of the Net Present Value (NPV) of a modification using a formula developed by the Department of the Treasury. . . . Based on the NPV results, the owner of your [Susan Brockbank's] Loan has not approved a modification."

On November 9, 2010, after notifying her that she did not qualify for a permanent loan modification and because Susan Brockbank remained in default under the Note and Trust Deed,

Chase recorded a Notice of Default in Utah County, Utah, to commence foreclosure of the Property. After notice was provided and the statutory reinstatement period had expired in accordance with Utah law, a trustee's sale was held eleven months later, on August 12, 2011. The Property was sold to Federal National Mortgage Association, as evidenced by a Trustee's Deed recorded in Utah County, State of Utah, on September 19, 2011.

On July 21, 2011, approximately three weeks before the trustee's sale, Plaintiffs Susan and Robert Brockbank filed their Complaint commencing this case. On September 13, 2011, a month after the trustee's sale, Plaintiffs amended their Complaint. Plaintiffs assert seven causes of action against Defendants: (1) breach of the Trial Plan; (2) breach of the implied covenant of good faith and fair dealing under the Trial Plan; (3) negligent misrepresentation; (4) professional negligence; (5) negligent infliction of emotional distress; (6) tortious interference; and (7) gross negligence.

## DISCUSSION

### Motion to Dismiss

Defendants JPMorgan Chase Bank N.A. and Chase Home Finance bring a motion to dismiss Plaintiff's Amended Complaint seeking to have each of the claims asserted against them dismissed.

**1. Robert Brockbank's Standing**

As an initial matter, Defendants argue that Plaintiff Robert Brockbank lacks standing because he is not a party to the Note, Trust Deed, or Trial Plan and has no legally protected interest in the property. "To have standing under Article III, a plaintiff must seek redress for the invasion of a legally protected interest." *Bevill Co., Inc. v. Sprint/United Mgmt Co.*, 77 Fed.

Appx. 461, 462 (10th Cir. 2003).  In addition, "one who is not a party to a contract lacks standing to sue for its breach." *Id.*

Plaintiffs argue that Robert Brockbank has standing to assert claims in this case because the income from the business that he co-owns with Susan was used to obtain the original Note and Trust Deed and was provided in connection with the application for a loan modification.  However, Robert Brockbank did not submit that information on his behalf and he did not become a party to any of the agreements.  The original loan documents and Trial Plan were entered into solely by Plaintiff Susan Brockbank.  Plaintiffs also claim that certain federal and state statutes would provide Robert with an interest in the Property even though such statutes are not at issue in this action.  Those statutes, however, all refer to persons with a record interest in the property.  Robert Brockbank has no record interest in the Property in this case.  Therefore, Robert Brockbank lacks standing to be a party in this case.  The court, therefore, grants Defendants' motion with respect to Robert Brockbank's lack of standing to assert claims against them in relation to the Property.

**2. HAMP**

Defendants next argue that there is no private right of action under HAMP and, therefore, Plaintiffs' claims are barred because they are HAMP or HAMP-based claims.  This court and other courts have repeatedly held that there is no private right of action under HAMP and that "HAMP-based claims disguised as other claims, such as breach of contract, are not cognizable." *Gale v. Auroral Loan Servs.*, 2011 WL 1897671 (D. Utah May 18, 2011).  Plaintiffs argue that they are third-party beneficiaries under the contract between Chase and Fannie Mae.  This court, however, has already rejected that argument.  *See id.*  Although Plaintiffs cite to two cases

favorable to their position, the vast majority of cases have concluded otherwise. Even if this court were to adopt the minority position Plaintiffs' advance, Plaintiffs' causes of action fail as a matter of law.

### 3. Contract Claims

Plaintiffs claim that Defendants breached the Trial Plan and breached the covenant of good faith and fair dealing inherent in the Trial Plan "by failing to offer [Plaintiffs] a permanent HAMP modification." Am. Compl. ¶ 118. The Trial Plan expressly states that Chase is not "obligated or bound to make any modification of the Loan Documents if [Chase] determines that [Plaintiffs] do not qualify or if [Plaintiffs] fail to meet any one of the requirements under this Plan." Chase had no contractual duty to modify Susan Brockbank's loan. Because Chase determined that Susan Brockbank did not qualify for a permanent modification under the HAMP guidelines, and because she failed to provide Chase with all the required documentation, Chase had no obligation to modify her loan.

Plaintiffs also argue that Chase continued to accept modified payments, which constituted an agreement that the loan would be modified. The Trial Plan, however, expressly notified Susan Brockbank that loan modification was a two step process and her loan would not be permanently modified until she was notified that she qualified and a subsequent loan modification had been signed. Therefore, Plaintiffs' breach of contract claim fails because it is contrary to the express terms of the Trial Plan. *See Lund v. CitiMortgage, Inc.*, 2011 WL 1873690, *2 (D. Utah ), *James v. Wells Fargo Bank, N,A.*, 2011 WL 1874707, *3 (D. Utah).

In addition, Plaintiffs' claim that Chase's acceptance of reduced mortgage payments constitutes a binding contract that was breached by Chase's subsequent denial and foreclosure

fails for lack of consideration.  This court has previously held that acceptance of modified payments does not constitute sufficient consideration to support formation of a contract under Utah law.  *Osmond v. Litton Loan Serv.*, 2011 WL 1988403, *2 (D. Utah) (dismissing plaintiffs' breach of contract claim because "a contract to modify an existing contract must include consideration" and plaintiff "did not offer consideration for a loan modification").  Without consideration, there is no enforceable contract under which Plaintiffs can bring a claim for breach of contract.

Plaintiffs further claim that representations by Chase amounted to an enforceable promise to modify the contract and refrain from foreclosure.  Any alleged oral agreement to modify the original note and deed of trust is barred by Utah's statute of frauds, which requires the loan agreement to be in writing.  Utah Code Ann. § 25-5-3; *Zion's Properties, Inc. v. Holt*, 538 P.2d 1319, 1322 (Utah 1975).  Such an agreement cannot be maintained under Utah law.

**4. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Defendants also argue that Plaitniffs cannot state a claim for breach of the covenant of good faith and fair dealing under the Trial Plan because such covenant cannot modify the express terms of the Trial Plan.  *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991).  The fact that a modification was not ultimately offered to Susan Brockbank cannot demonstrate a breach of the covenant of good faith and fair dealing when the Trial Plan specifically states that she may not qualify for a modification.  The plain language of the Trial Plan thus precludes Plaintiffs' claim.

Plaintiffs' opposition to Defendants' motion also appears to argue for the first time that entering into the Trial Plan was a breach of the covenant of good faith and fair dealing under the original loan documents because Chase accepted modified payments instead of providing Susan

Brockbank with an amount to pay off the default. Plaintiffs claim that the modified payments put Susan Brockbank further in debt and made paying off the default more difficult when she was denied a modification. Accordingly, Plaintiffs argue that Chase's actions intentionally destroyed Plaintiffs' right to receive the fruits of the contract, which would have been to cure the original default and remain in the home. These arguments ignore the fact that Susan Brockbank chose to enter into the Trial Plan with Defendants. Susan Brockbank always had the right to pay off the default amount under the original loan. Although Chase agreed to accept modified payments while it considered a permanent modification, the Trial Plan did not prohibit Susan Brockbank from becoming current on her payments under the original loan. Moreover, Susan Brockbank's right to receive the fruits of the original loan–staying in her home–was contingent on making the agreed upon payments under the original loan. When she did not make those payments, Defendants had a right to foreclose. Defendants delayed exercising its rights under the original loan and engaged in the loan modification process in an attempt to allow Susan Brockbank to receive the fruits of the original loan agreements–to remain in her home--despite her failure to make the agreed upon payments under the original loan. Furthermore, after a permanent modification was denied, Chase proceeded with foreclosure according to Utah law, which gave Susan Brockbank time to cure her default under the original loan. Therefore, she did not lose her right to cure the default. Plaintiffs cannot state a claim for the breach of the implied covenant of good faith and fair dealing based on such facts and the claim, even if it had been asserted in Plaintiffs' Complaint, fails as a matter of law.

**5. Negligence Claims**

Plaintiffs assert four negligence claims against Defendants: negligent misrepresentation,

professional negligence, negligent infliction of emotional distress, and gross negligence. Defendants argue that the economic loss rule bars Plaintiffs from recovering under these causes of action. The economic loss rule holds that "when parties have contracted . . . to protect against economic liability, contract principles override the tort principles . . . and, thus, economic losses are not recoverable." *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs.*, 2001 Utah 54, ¶ 44, 28 P.3d 669 (Utah 2001). The economic loss rule provides that contract principles override tort principles and economic damages are not recoverable in negligence absent physical property damage or bodily injury. *Id.*, 2001 Utah 54, ¶¶ 32, 44.

Relying on *SME Indus.*, Judge Stewart has recently dismissed similar claims to those asserted in the present matter because "Defendants cannot be liable for performing under the Note and Deed of Trust" nor can plaintiff "recover beyond the bargained for risks as contained in the Note and Deed of Trust." *Anderson v. Homecomings Financial, LLC*, 2011 WL 2470509, *19 (D. Utah June 20, 2011). Plaintiffs' claims in this case are similarly barred by the economic loss rule.

Moreover, Plaintiffs negligence claims also fail because Chase does not owe a duty to Plaintiffs. In *First Security Bank v. Banberry Development Corp.*, the Utah Supreme Court rejected a borrower's argument that the bank owed him a fiduciary duty when it loaned him money. 786 P.2d 1326, 1332 (Utah 1989). The court explained that in an "arms length transaction with no confidential relations between them, as is the case in a typical consumer loan transaction, a bank has "no affirmative duty" to the borrower. *Id.* at 1334.

In this case, the Trial Plan between Brockbank and Chase was an arms length transaction and no confidential relationship existed. Although Chase had a security interest in the Property,

Chase was never placed in charge of the Property in a manner giving rise to a duty to Plaintiffs. Therefore, Defendants owe no duty to Plaintiffs and cannot be held liable under their negligence claims.

**6. Tortious Interference Claim**

Plaintiffs fifth cause of action alleges that Defendants tortiously interfered with the original contract by "offering a modification," which allegedly induced Plaintiffs to breach the original contract by making reduced monthly payments. As a tort, this claim is barred by the economic loss rule. In addition, "[i]t is settled that one party to a contract cannot be liable for the tort of interference with contract for inducing a breach by himself or the other contracting party." *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 301 (Utah 1982). Therefore, Plaintiffs' fifth cause of action fails as a matter of law.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED. Plaintiffs' Complaint is dismissed, each party to bear his, her, and its own costs. The Clerk of Court is directed to close the case.

DATED this 4th day of April, 2012.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge